Agnes, A.J.
This is a civil action that arises out of a contract between the plaintiff, Francis D. McGuire (hereafter, “McGuire”), an architect, and the defendant, Michael Woyciechouski d/b/a Yankee Builders and Contractors (hereafter, “Yankee Builders”), for the construction of a custom home in Westport, Massachusetts. The contract was entered into by the parties in 1988. The construction took place during 1989. This action was brought by the plaintiff in 1998 alleging that defendant Yankee Builders committed the tort of misrepresentation because it did not install the roof of the home in a good and workmanlike manner (count 1), and breached its contract with the plaintiff because it did not comply with a warranty in the contract that guaranteed that the material described in the specifications would be used in the construction, and that the work would be performed in a workmanlike manner (count 2).
The defendant maintains that it is entitled to summary judgment because the plaintiffs claims are foreclosed by G.L.c. 260, §2B, which bars tort actions seeking damages for “any deficiency or neglect” in the construction of a home that are commenced more than 6 years after the home is completed and occupied. The plaintiff counters that his tort claim is not time barred because the 6-year provision in the statute of repose is tolled when the defect is concealed by fraud. He also maintains that the 6-year statute of limitations applicable to his contract claim, see G.L.c. 260, §2, also was tolled by the discovery rule, G.L.c. 260, §12, because he did not discover the defect for a number of years after the construction was completed.
BACKGROUND
For purposes of the defendant’s motion, I assume the following facts to be true which consist of facts alleged by the plaintiff as well as facts alleged by the defendant and conceded by the plaintiff. On November 22, 1988, defendant Yankee Builders submitted its proposal to the plaintiff for the construction of a home at 505 Old County Road in Westport, Massachusetts. See Plaintiff’s Memorandum In Opposition to Defendant’s Motion for Summary Judgment (hereafter, “Plaintiffs Opposition”), exhibit A. The proposal called for the construction of a 29 by 29 foot custom home “as per plan and specifications.” Plaintiffs Opposition, exhibit A. These plans and specifications called for the installation of an “EPDM rubber membrane roof." Plaintiffs Opposition, exhibit B [affidavit of plaintiff] para. 3. The plaintiff, as a registered architect, stamped the construction documents that were submitted to the building inspector. A building permit was issued by the Town of Westport on March 20, 1989. The plaintiff visited the job site at times and answered questions from defendant Yankee Builders regarding the plans and specifications for the home. The parties did not specifically discuss the substitution of a different type of roof from that contained in the specifications, the roofing materials to be used or the construction of a flat roof. The plaintiff was not aware that the description of the roof contained in the “pricing sheet” attached to the defendant’s proposal, Plaintiffs Opposition, exhibit A (“Roofing: Flat-Dibiten Roof’), was not a brand of rubber, membrane roofing. *569 Plaintiffs Opposition, exhibit B, para. 4. When the home was substantially completed, the plaintiff inspected the home with the town building inspector. The walls were up and the framing was not exposed to view. Plaintiffs Opposition, exhibit B, para. 6. The Town of Westport issued a building permit to the plaintiff on December 4, 1989. Plaintiffs Opposition, exhibit B, para. 7.
Shortly after moving into the home, the plaintiff experienced water leakage. When Yankee Builders was initially informed, it reported that the problem was due to defective window units which were replaced at plaintiffs expense. Plaintiffs Opposition, exhibit B, para. 10. When the water problem persisted, Yankee Builders did a further investigation and discovered that metal flashing had not been installed over some wooden banding above the upper gable walls. Plaintiffs Opposition, exhibit B, para. 12. By letter dated October 5, 1992, defendant Yankee Builders reported to the plaintiff that it had installed the flashing, without any additional charge, but added a concern about the roof.
Regarding future water problems, it should be noted that the flat roof design is of high risk. As you know, the flat roof is a series of hips and valleys so designed to shed the water through the openings in the parapet walls. If the water settles, or doesn’t shed fast enough you run the risk of water to seep through, below. A better arrangement would be to redesign the roof and parapet to allow water to drain under the wall and into the gutter system. I would also recommend that the gutter system be built out an additional 4" to discourage dampness and water wicking through and into the sidewalls. Please contact me if you wish to pursue these suggestions.
Plaintiffs Opposition, exhibit C.
The plaintiff alleges that between 1992 and 1994, defendant Yankee Builders “dissuaded McGuire from investigating the problems himself and blamed the problems on the design of the roof. Each time Yankee allegedly addressed the water problems, it assured McGuire that the problem had been solved and that any further problems were due to the design of the roof.” Plaintiffs Concise Statement in Opposition to the Defendant’s Motion for Summary Judgment, para. 8.
The plaintiffs home suffered additional damage due to water leakage during the winter period 1993-1994. By letter dated December 10, 1994, the defendant Yankee Builders responded to correspondence from the plaintiff as follows:
I have just received your letter 12/7/94 and would like to respond. Some time ago I informed you of the potential for roof leaks at your Westport house. I felt that the roof as constructed would not allow for adequate drainage and runoff, and that the longer this condition was allowed to exist, the worse it would get. Now after the heavy snow-fall of last winter a leak has developed. The flatness of the roof and the parapet wall surround create a trap for snow.
According to my records your insurance company paid approx. $1200.00 to correct this situation, of which $300.00 was paid to me, for cosmetic work, and a 200.00 balance remains unpaid. Surely a portion of that money should have been used to correct the problem.
As for the roofing product used on your house, the decision to use a torch-down roofing was made for pricing considerations with your full knowledge. I have enclosed a copy of our original contract, along with the specification sheet, approved and endorsed by you. Any questions regarding the selection of material should have been raised at the time of inception, not now 6 years later.
Plaintiffs Opposition, exhibit E.
The following year, on September 19, 1995, the Dibiten company inspected the plaintiffs roof and issued a written report on October 22, 1995. According to this report, “the Dibiten membrene, where visible, was found to be in good condition, free from any signs of manufacturing defects and weathering normally for its relative exposure age.” Plaintiffs Opposition, exhibit F. The report went on to indicate that there was evidence of improper installation. Several years later, in May 1998, the plaintiff hired a roofing contractor to repair the roof. The roof deck was removed. There was evidence that defendant Yankee Builders failed to properly install the roof, and that the home’s framing and electrical system were compromised by water infiltration. Plaintiffs Opposition, exhibit B, paragraph 19. Furthermore, when the roofing contractor removed portions of the interior of the home, further evidence was uncovered of substandard work by the defendant that did not conform to the requirements of the state building code or the specifications of the contract. Plaintiffs Opposition, exhibit B, paragraph 20.
DISCUSSION
1. The Standard for Summary Judgment.
Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991): Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and maybe granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is done, the burden shifts to the party opposing summary judgment who *570 must allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “(t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony’s Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822(1986), quoting National Ass’n of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other’s party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). This is because negligence claims so often involve disputed questions of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 Mass. 47, 65 (1983); Solimene v. B. Gravel & Co., KG, 399 Mass. 790, 794 (1987). However, even in negligence actions, summary judgment is appropriate “if no rational view of the evidence permits a finding of negligence.” Roderick, supra at 949.
2. The Statute of Repose bars the plaintiffs tort claim.
G.L.c. 260, §2B, provides in part, that an “[a]ction of tort for damages arising out of any deficiency or neglect in the design, planning or construction or general administration of an improvement to real property . . . shall be commenced ... in no event . . . more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.” There is no dispute in this case that the construction of the home and the plaintiffs occupation of it took place more than 6 years prior to when the suit was filed. The repose feature of the statute forbids the court from considering that the plaintiff might not have discovered the problem that gave rise to his action before the expiration of the 6-year period. Sullivan v. Iantosca, 409 Mass. 796, 798 (1991). Nonetheless, the plaintiff urges this court to acknowledge that there is an exception to the bar against the commencement of litigation after 6 years when the defendant engages in fraudulent conduct that conceals and affirmatively prevents the plaintiff from discovering the harm within 6 years.
The issue was noted and left open by the Supreme Judicial Court in Sullivan, supra. “We are not concerned in this case with a claim of fraudulent concealment or estoppel that is based on conduct apart from the wrongdoing that is the basis of the plaintiffs claim.” Id. at 798 n. 3. In Sullivan, the Supreme Judicial Court cited Hill v. Fordham, 186 Ga.App. 354, 357-58 (1988), where it was held that the Georgia statute of repose was tolled by evidence of the defendant’s concealment of information because “[t]he sun never sets on fraud.”[1]
The question left open in Sullivan was answered in the affirmative by the Superior Court in North Middlesex Regional School District v. Bird Incorporated, Middlesex Superior Court, No. 98-0192 (12/2/99) (Hillman, J.) ("To hold that a defendant can be relieved from liability for wrongful or tortious acts by concealing them during the period of repose would provide an incentive for fraud”). In the present case, however, it is unnecessary to consider whether the statute of repose does not apply in circumstances in which there is affirmative evidence of fraudulent concealment, because there is no evidence to support such a finding in this case.
The plaintiff asserts, in his statement in opposition to the defendant’s motion for summary judgment, that “Yankee took affirmative steps to conceal its wrongful actions and prevent McGuire from discovering the truth.” Plaintiffs Concise Statement in Opposition to Defendant’s Motion for Summary Judgment, para. 19. However, the only facts on which the plaintiff relies to support this assertion are the various attempts made by the defendant to correct the problem by repairing the windows, and by adding flashing. A builder’s mis-diagnosis of a problem involving the construction of a home is not evidence of fraudulent concealment. A builder’s failed attempts to correct a problem involving the construction of a home is not evidence of fraudulent concealment. As early as 1992, if not sooner, at a time well before the statute of repose would have affected the litigation in this case, it was apparent to the plaintiff that water was collecting on the roof of the plaintiffs home and that by some process it then entered the home. Plaintiffs Opposition, exhibit C. Although the corrective measures taken by the defendant may not have been adequate, the plaintiff was on notice that the problem had not been corrected. Plaintiffs Opposition, exhibit C. In these circumstances, the application of the statute of *571 repose Is in keeping with the purpose of the legislation which is to place an outer limit on the liability of those involved in design and construction. See Klein v. Catalano, 386 Mass. 701, 709-10 (1982).
3. The plaintiffs so-called “breach of contract” claim in count two should be treated as a tort claim and is barred by the statute of repose.
In count 2 of his complaint, the plaintiff alleges that the defendant violated an express warranty to complete the work “in a workmanlike manner according to standard practices.” Plaintiffs Complaint, para. 29. “If a design professional expressly warrants a certain result, ‘the plaintiff may maintain an action for breach of express warranty.’ ” Anthony’s Pier Four, Inc. v. Crandell Dry Dock Engineers, Inc., 396 Mass. 818, 822 (1986), quoting Klein v. Catalano, supra at 708. In the present case, however, the claim is that the plaintiff did not use the materials specified in the contract and did not perform the contract in a workmanlike manner. These are not promises that imposed a higher duty on the defendant than those inherent in all such contracts. See Anthony’s Pier Four, Inc., supra at 823. As the Appeals Court noted in Kingston Housing Authority v. Sandonato & Bogue, Inc., 31 Mass.App.Ct. 270, 273 (1991), the “act of unintentionally failing to conform to contract specifications is not different from negligent workmanship.” Thus, count 2 of the plaintiffs complaint should be treated as a tort claim which, for the reasons stated above, is barred by the statute of repose.
ORDER
For the above reasons, the defendant’s motion for Summary Judgment is ALLOWED.

The plaintiff also argues that the defendants should be equitably estopped from relying on the statute of repose. See Plaintiffs Memorandum in Opposition to Motion for Summary Judgment at 8-9. See McLearn v. Hill, 276 Mass. 519, 523-27 (1931) (defendant who induces a plaintiff to discontinue a timely action is estopped from pleading the statute of limitations to a new action); New England Power Co. v. Riley Stoker Co., 20 Mass.App.Ct. 25, 32 (1985) (there are no rigid criteria to apply in determining whether a defendant’s conduct was such as to give rise to an estoppel). See also Boston & A.R.R. Co. v. Reardon, 226 Mass. 286, 291 (1917) (“[D]octrine of estoppel is not applied except when to refuse it would -be inequitable”). In view of the absence of evidence of fraudulent concealment, as discussed in the text, there is no need to consider whether the doctrine of equitable estoppel could operate to avoid the statute of repose.