NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-68

JOHN GIANINO, personal representative,[1]

vs.

BOSTON MEDICAL CENTER & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff[3] appeals from a judgment dismissing his complaint against the defendant Dr. Joseph Louca, on the ground that the claims were time-barred by the statute of repose applicable to medical malpractice actions, G. L. c. 260, § 4.[4] On appeal, the plaintiff argues that the judge erred in failing to (1) apply the doctrine of equitable tolling and (2) toll the

---

[1] Of the estate of Alice Zousoumas.

[2] Michelle Sia, Christine Curry, Joseph Louca, and Thamarah Crevecoeur.

[3] The plaintiff was substituted as the plaintiff on appeal following Zousoumas's death.

[4] The claims against Boston Medical Center, Michelle Sia, Christine Curry, and Thamarah Crevecoeur remain pending in the Superior Court.

statute of repose in accordance with the Supreme Judicial Court's third updated order promulgated in response to the COVID-19 pandemic (COVID-19 order).[5]  We affirm.

Background.  Between 2013 and 2014, Alice Zousoumas received prenatal, intrapartum, and postpartum care from a cohort of clinicians at Boston Medical Center (BMC), in connection with her pregnancy, labor, and delivery.  As part of that care, on January 7, 2014, Dr. Louca administered epidural anesthesia to Zousoumas while she was infected with Methicillin-resistant Staphylococcus aureus (MRSA), resulting in an epidural abscess that escalated into chronic infections, permanent disabilities, and other long-term health effects.

On January 6, 2017, Zousoumas filed suit against BMC and several healthcare professionals alleging, inter alia, medical malpractice.  As relevant here, she named Dr. Eddy Feliz as the anesthesiologist who administered the epidural.  She did so based on medical records produced by BMC in discovery that seemed to identify Dr. Feliz as the attending anesthesiologist. On May 22, 2017, Dr. Feliz filed an answer to the complaint denying the allegations against him and later answered

_____

[5] See Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144 (June 24, 2020), https://www.mass.gov/doc/repealed-sjc-third-updated-order-regarding-court-operations-under-the-exigent-circumstances/download [https://perma.cc/5K7R-27AT].

2

interrogatories asserting that he "never had any interactions with [Zousoumas] at any time," and that he had no knowledge of other physicians involved in her care. Zousoumas was deposed on March 11, 2020, during which she conceded that she had neither met nor spoken with Dr. Feliz, and that he had never been involved in her care.

Nine months later, on January 14, 2021, Zousoumas's attorneys learned that Dr. Louca was the anesthesiologist who performed the epidural. On February 10, 2021, Zousoumas served a motion to amend the complaint pursuant to Superior Court Rule 9A, seeking to substitute Dr. Louca as a defendant. The judge allowed the motion on February 16, 2021. Thereafter, Dr. Louca moved to dismiss so much of the complaint alleging claims against him, on the ground that they were time-barred by G. L. c. 260, § 4. In a thoughtful memorandum of decision, a judge allowed the motion to dismiss and entered a separate and final judgment in favor of Dr. Louca. This appeal followed.

Discussion. "We review the allowance of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint." Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 614 (2019), citing Calixto v. Coughlin, 481 Mass. 157, 158 (2018).

3

1.  Statute of repose.  As a threshold matter, the nomenclature of G. L. c. 260, § 4 instructs our resolution of the plaintiff's arguments.

> "General Laws c. 260, § 4, provides in pertinent part that 'in no event shall any . . . action' sounding in 'contract or tort for malpractice, error or mistake against physicians, surgeons . . . hospitals and sanitoria' 'be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based.'  This language constitutes a statute of repose" (footnote omitted).

Joslyn v. Chang, 445 Mass. 344, 346-347 (2005).  Consequently, while G. L. c. 260, § 4 does not explicitly designate itself as such, the Supreme Judicial Court has expressly characterized this seven-year limit on medical malpractice actions as a statute of repose.

Here, the "act or omission" that allegedly caused Zousoumas' injury was the epidural procedure performed by Dr. Louca on January 7, 2014.  Thus, to be within the seven-year statute of repose, the plaintiff needed to have brought this action no later than January 7, 2021.  The motion for leave to amend the complaint to substitute Dr. Louca, filed February 10, 2021, was too late.  See Nett v. Bellucci, 437 Mass. 630, 631 (2002) (operative date for calculating statute of repose is date of filing motion for leave to amend complaint to add party).

2.  Equitable tolling.  The plaintiff contends that he is entitled to application of the doctrine of equitable tolling

4

because he was misled by inaccurate medical records and the "[d]efendant's tact[ica]l failure to more timely disclose [Dr. Louca] as a relevant party."  See Halstrom v. Dube, 481 Mass. 480, 485 (2019).  Even assuming this to be true, we are constrained to reject the plaintiff's argument that the doctrine is available here.

A statute of repose is "a rigid prohibition of action." Joslyn, 445 Mass. at 350.  It is evident that "statutes of repose are not subject to any form of equitable tolling."  Id. See Nett, 437 Mass. at 646 ("Notwithstanding compelling equitable considerations, statutes of repose are not tolled"). Indeed, a "statute of repose eliminates a plaintiff's cause of action even in cases of fraudulent concealment."  Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 354 (2018).  Where, here, the plaintiff moved to amend the complaint more than a month after the statute of repose had passed, "we cannot introduce an equitable exception when the Legislature has fashioned an ironclad rule."  Joslyn, supra at 351.

3.  COVID-19 order.  The plaintiff further asserts that the COVID-19 order extended the statute of repose, because it tolled "all civil statutes of limitations . . . from March 17, 2020, through June 30, 2020," thus providing an additional 105 days

5

for the plaintiff to amend his complaint.[6]  See COVID-19 order, supra at ¶ 13.  In essence, the plaintiff asks us to interpret "all civil statutes of limitations" to include statutes of repose.  This we decline to do.

In interpreting the COVID-19 order, "we rely upon basic principles of statutory construction."  Shaw's Supermkts., Inc. v. Melendez, 488 Mass. 338, 341 (2021).  "If the language is clear and unambiguous, we 'must give effect to its plain and ordinary meaning.'"  Id., quoting Doherty v. Civil Serv. Comm'n, 486 Mass. 487, 491 (2020).  "Where a word is not defined in a statute, we give the word its usual and accepted meaning, so long as those meanings are consistent with the statutory purpose."  Shaw's Supermkts., Inc., supra at 342.

The plaintiff points to the title of G. L. c. 260, "Limitations on Actions," to support his contention that the seven-year limit imposed by § 4 falls under the umbrella of statutes of limitations.  This, however, is antithetical to the Supreme Judicial Court's explicit characterization of the relevant portion of § 4 as a statute of repose, see Joslyn, 445

---

[6] The plaintiff also references a paragraph in the COVID-19 order tolling "all deadlines set forth in statutes or court rules . . . that expired at any time from March 17, 2020, through June 30, 2020."  COVID-19 order, supra at ¶ 14.  This provision is of no help to the plaintiff, as his claims expired on January 7, 2021, a date well outside the expiration window specified in the COVID-19 order.  See Shaw's Supermkts., Inc., 488 Mass. at 343.

Mass. at 346-347, and its repeated conclusion that "[a] statute of repose is distinct from a statute of limitations," Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 332 (2021). See Bridgwood, 480 Mass. at 351 ("Statutes of repose and statutes of limitations are different types of limitations on actions"). "While a statute of limitations provides a procedural defense to a legal claim, a statute of repose provides a substantive right to be free from liability." Conservation Comm'n of Norton, supra at 332, quoting Bridgwood, supra at 352. Thus, applying the "usual and accepted meaning" of statutes of limitations, we cannot infer that the Supreme Judicial Court intended to amalgamate the two independent limitations as one. See Bridgwood, supra.

This result is consistent with the scope and purpose of the COVID-19 order as being "limited to court operations under the exigent circumstances created by the COVID-19 pandemic." Dunn v. Langevin, 492 Mass. 374, 378 (2023). In the same way the Supreme Judicial Court "did not purport to supervise executive agencies" in issuing the COVID-19 order, Graycor Constr. Co. v. Pacific Theatres Exhibition Corp., 490 Mass. 636, 646 (2022), neither can it have intended to supersede policy decisions made

7

by the Legislature, see <u>Moran</u> v. <u>Benson</u>, 100 Mass. App. Ct. 744, 748-749 (2022).

<u>Judgment entered September 28, 2023, affirmed.</u>

By the Court (Blake, C.J., Neyman & Grant, JJ.[7]),

<br>

Clerk

Entered:  December 27, 2024.

---

[7] The panelists are listed in order of seniority.